370 So.2d 660 (1979)
Henrietta BENWARD
v.
Joseph GERACE, Administrator of the Louisiana Department of Employment Security and Orleans Parish School Board.
No. 10010.
Court of Appeal of Louisiana, Fourth Circuit.
April 10, 1979.
*661 Henrietta Benward, in pro. per.
James A. McGraw, Baton Rouge, for defendants-appellees.
Before REDMANN, BOUTALL and SCHOTT, JJ.
BOUTALL, Judge.
This is an appeal from a decision of the Louisiana Department of Employment Security denying unemployment compensation benefits.
Henrietta Benward, appellant, was retired from her position as a school teacher on May 28, 1976 because she had reached the age of 65. She applied for unemployment benefits on May 30, 1976. The Louisiana Department of Employment Security determined that appellant was not entitled to benefits and an appeal was taken. Both the Louisiana Board of Review and Civil District Court for the Parish of Orleans affirmed the denial of benefits. Mrs. Benward now appeals to this court.
The denial of benefits was based upon a questionnaire filled out by government employees upon retirement. In this document, appellant stated that she would only be available for volunteer work on a part-time basis. This questionnaire was signed by appellant and is part of the record in this case. She also signed a form for the agency on August 31, 1976 on which she stated: "I am able and available for summer employment, I did not seek employment because no one will hire anyone over 65 years of age."
Benefits were denied pursuant to Louisiana Revised Statute 23:1600 which provides:
"An unemployed individual shall be eligible to receive benefits with respect to any week only if the administrator finds that:

* * * * * *
"(3) He is able to work, and is available for work."
The agency found that appellant was, by her own admission, not available for work within the wording of the statute. At the hearing before the appeals' referee, Mrs. Benward testified that she did seek work during the summer of 1976 and that she really wanted full time work, both in conflict with her signed statements. She did admit having signed the statements, however. No other evidence or testimony was introduced at the hearing.
Findings of the Board of Review as to facts are conclusive if supported by sufficient evidence and in the absence of *662 fraud. Louisiana Revised Statute 23:1634. The Board's decision resolving the conflict between the testimony of appellant and the signed documents in favor of the documents is supported by sufficient evidence since the documents are present in the record. Further, we agree with the finding that appellant was not "available for work" within the meaning of R.S. 23:1600. A claimant cannot arbitrarily remove herself from available work by restricting her willingness to certain hours or conditions not usual or customary in the occupation. See Lykes Bros. Steamship Company v. Doyal, 338 So.2d 594 (La.1976).
For these reasons, the denial of benefits is affirmed.
AFFIRMED.
REDMANN, Judge, concurring.
If a schoolteacher were entitled by law to collect both retirement pay and (unless disqualified) unemployment benefits because of involuntary retirement, then Henrietta Benward should collect unemployment benefits. Defendant's withholding benefits forever because of its unfair determination that she was not "available for work" one week is insupportable. (The circumstances of defendant's determination are set forth in an appendix.)
But a schoolteacher or other governmental (or private) employee is not entitled to such dual compensation for retirement. La.R.S. 23:1601(7)(c), as adopted in 1950 so provided until Acts 1968 No. 655 omitted the word "governmental", leaving only "private" pension plan beneficiaries affected by that section. However, the title to Act 655 gave no hint that one of its purposes was to make governmental employers pay unemployment compensation to their retirees in addition to retirement benefits. Nor, indeed, did the wording of the body of the act suggest such a purpose: the body indicates only that one who retired from private employment cannot collect unemployment pay in addition to the retirement pay on account of the retirement. The omission of "governmental" retirement pay presumably had worthy purposes, perhaps to allow one drawing retirement pay from one branch or agency or level of government to work for another with full unemployment protection. But the omission of "governmental" had the effect of removing the word that made it clear that a governmental employee, involuntarily retired with pay, is not thereby entitled to unemployment benefits as well. (An amendment by Acts 1976 No. 366, effective October 1, 1976, again makes it express that government employees cannot draw both benefits because of the one retirement.)
Unemployment benefits and retirement benefits are both wage-replacement devices, and it is as unfair to the governmental employer as it is to the private employer to make an employer replace wages of a retired employee twiceonce in retirement pay and once in unemployment benefits.
The title-body clause, La.Const. art. 3 § 15(A), requires that an Act have a title indicative of its object and invalidates "extraordinary subject matter" in the body of that Act that is not indicated by the title; Terrebonne Par. P. J. v. Board of Com'rs, La.1975, 306 So.2d 707. The title of Acts 1968 No. 655 was simply "An Act To amend and re-enact [R.S. 23:1601(7)(c)] relative to disqualification for benefits under the Louisiana Employment Security Law." That title says no more than that the Act's purpose is to amend existing law, without any hint of the intended amendmentan amendment also not hinted at in the body of the Act. There is no way to learn from that Act's title (or body) that its object is to allow governmental employees both retirement pay and unemployment compensation upon their retirement. That Act so interpreted would therefore be unconstitutional.
Accordingly appellant's having been forced to retire does not entitle her to unemployment compensation benefits, notwithstanding that she was available for work.

APPENDIX
The apparent basis upon which the agency and finally the Board of Review disqualified *663 Mrs. Benward (for only one week, although she was never so told) was her signature on two forms filled in by someone elsepresumably a clerk in the employment security office. Those forms contained the statements that (on May 30) Mrs. Benward wanted only part-time work and (on August 31) that she had not tried to find work because employers would not hire the over-65. The latter statement is irrelevant to whether Mrs. Benward was "available for work" within R.S. 13:1600(3); the former may limit but does not prevent availability. Mrs. Benward maintains that she never made those statements anyway.
The trial court had earlier remanded this matter for a hearing because there had been none. The "hearing" that resulted was worse than none: Appeals referee Andrew L. Kern both refused to hear Mrs. Benward's denial of one statement and explanation of the other and added insult to that injury by shaming her and arguing with herpage after page in the transcriptfor signing a form that contained an error:
Referee: Whatever you want to say about these 2 statements. One sayslet's go over them again. They're very short. One says I did not seek employment, because no one will hire anyone over 65 years of age. The other says what type work will you accept. The answer is volunteer work, only part-time work. Anything you want to say about that.
Claimant: The statement was really this I'm going to have a hard time getting work, because people pass 65 they don't hire so quickly. That's the statement.
Referee: I hate to contradict you, ma'am. That is not the statement. If that was the statement, I would've read it. I read the statement. What you're saying now is anything you'd like to say. You're perfectly welcome to say, but we will not have it in the record that that is the statement on these forms, because that's not the statement on the forms. That you might have difficult whatever you just said.

* * * * * *
What did you do then, Mrs. Benward, during the summer of '76 to find work?
Claimant: I went out and looked for work. I went to the employment office several times.

* * * * * *
Claimant: I asked the ladyI told the lady I would like the kind of work that probably she's doing. Secretarial work or interviewing work or something. Since she told me first that I would hardly be able to get work teaching.
Referee: Well, that's obvious, isn't it? She didn't have to tell you that. You knew that probably better than she did. You're a teacher yourself.

* * * * * *
Referee: So you applied at the Agency in '76 in the summer of '76 for work. You said as an interviewer or as a teacher. What about the statement here that you only worked part-time?
Claimant: I've heard that statement several times, but I'm really not aware of saying that because
Referee: Whether you said it or not you signed the statement. I'll show it to you again.
Claimant: I have the statement.
Referee: You did sign it, is that right, ma'am?
Claimant: Yes.
Referee: Is it true or isn't it? That you only worked part-time.
Claimant: No, I [did?] regular work. I wanted regular work.
Referee: Then, of course, we're back to the original question. Why did you sign a statement that wasn't correct? You're a teacher, an educated person.
Claimant: Like I'm saying I really wasn't aware of that part-time work.
Referee: I don't understand that remark. You weren't aware of that. It's right there. And you acknowledged it right there on the statement in very clear writing.
*664 Claimant: Well, if I could've gotten part-time work, I would've taken part-time work. But I wanted regular work. I been working regular for 21 years.
Referee: That's fine.
Claimant: But not I just wanted part-time work.
Referee: That's the problem, you see, because this statement which you signed says only part-time work. It does not say I will accept part-time work. It says only part-time work. That was the problem why the Agency held you not available, you see. You're restricting your work to part-time. They say you're restricting your work to part-time, because you said only part-time work.
Claimant: Every agency I went to looking for work (inaudible) part-time work.
Referee: Can you account for how you signed this statement? An educated person like yourself signed this statement where it said only part-time work. Why would you do that? Why would you tell them no that is not correct? I will not sign the statement if there's only part-time work, because this is not correct.
Claimant: I did say several times after.
Referee: I don't know what you mean, ma'am, after.
Claimant: Well, I came here several times and had an interview. In the meantime, I came I said I didn't say anything about no part-time work.
Referee: Another statement I'm concerned with is August 31st that was at the end of the summer. You signed a statement. It says clearly again very clearly. I did not seek employment because no one will hire anyone over 65 years of age. I did not seek employment. Very clearly.
Claimant: I did not say (inaudible) just closedjust about a week after school closed.
Referee: No, ma'am. That wasn't the week after school closed. That was August 31st. School was just started open again.. . . Whatever you want to say about that statement, Mrs. Benward, you finished this statement August 31st where it says only part-time work and you signed it. That statement again it saysthat's August 31st '76. It's not right at school closing time. It's near school opening time. In fact, at the end of the summer August 31st. It says again I did not seek employment because (inaudible). Is that clear? I did not seek employment.
Claimant: Whatever I said I said under one breath. The next time I came here I was ready to change that statement that was down there. I said no I want to work. The lady said if you want work then we'll change the statement on that form.
Referee: You did admit that was the truth, didn't you? You signed this truthful statement there that you did not seek employment?
Claimant: No, I didn't say that, `cause they didn't ask that question.
Referee: There it is right on there, ma'am. You read it yourself. I've read it 3 times.
Claimant: The first time (inaudible) like you said it.
Referee: You signed it.

* * * * * *
Williams [an "aide" from New Orleans Legal Assistance Corporation]: Mr. Kern, did you notice in that statement how it shifts from the first sentence to the second. The first sentence clearly stating that I am able and available for summer employment. See this first sentence?
Referee: I understand. I read that.
Williams: Then it goes into a reverse and says I did not seek employment because no one will hire
Referee: Mrs. Benward, I want you to read that last sentence there, please, ma'am.
Claimant: Aloud?
Referee: Yes, read it aloud onto the record.
Claimant: I am able and available
Referee: That's not the last sentence.
Claimant: No one will hire
Referee: No, that's not the beginning of the last sentence.
*665 Claimant: I did not seek employment, because no one will hire anyone over 65 years of age. I did not say that.
Referee: Why did you sign it, ma'am? That's what I want to know. Why did you sign an untrue statement?
Claimant: I said I didn't even remember seeing that at the top.
Referee: So you're saying you signed it without reading it.
Claimant: I didn't remember seeing it up there.
Referee: Are you saying a statement was put on there after you signed your signature to [it?]
Claimant: I'm not saying that.
Referee: How could you possibly not see it, Mrs. Benward? You see it now.
Claimant: I read it now.
Referee: Is that a reason why you didn't read it back there (inaudible)?
Claimant: I would've done justicewhy would I say I'm not seeking employment because I'm 65 when I say I'm available for work.
Referee: That's what I want to know, ma'am. Why did you sign a statement that had that on that? That's exactly the question I've been trying to elicit from you. Why did you sign it? An educated person like yourself. That's the problem we're facing here. You signed the statement. In fact, you signed 2 different statements, you see, limiting your availability. This second statement right here. This question. What type of work will you accept only part-time work? Then you signed another statement, a separate and distinct statement on another form altogether saying I did not seek employment because no one will hire anyone over 65 years of age.

* * * * * *
Referee: . . . Anything else you want to say about the availability during the summer of '76 before we close?
Claimant: Yes, I did go look for work during the summer of '76. I did go to look for work even after the
Referee: I want you to understand again you're saying here under oath that you sought work during the summer of '76 and that is in direct conflict with the statement you gave here and you signed on August 31st '76. We have that in the record. A conflict in the testimony. Anything else, Mrs. Benward?

* * * * * *
Claimant: No.